CASE No. 827.

LEE v. BUCK & CO.

1. Where two causes affecting, in part, the same property, were heard together, but not consolidated, the failure to appeal from the judgment in one case is no ground for a dismissal of an appeal in the other.
2. Certain personal property, including a mule, Kit, was mortgaged to A, and the same property was subsequently mortgaged to B, except Kit, which had been, meantime, sold by the mortgagor to C. Upon default, A and B, in concert, seized the property, including Kit, and sold it for more than enough to satisfy A's mortgage, and A paid the balance to B. *Held*, that A was liable to account to C out of such balance for the value of Kit.

---

Before Townsend, J., Horry, June, 1877.

Action commenced November 16th, 1875, by Ethel Lee against William L. Buck, B. L. Beaty, Joseph Todd and others, to recover the value of two mules, Kit and Jack. The claim for the value of Jack was abandoned before the hearing of the appeal.

On December 31st, 1872, W. F. Hardee gave to Joseph Todd, to secure a debt, a mortgage upon four mules, Kit, Jake, Pete

and Jack. On March 10th, 1873, Hardee sold Kit to Ethel Lee for $200, paid by a credit on a past-due note. May 14th, 1873, Hardee mortgaged the mules Jake, Pete and Jack, and also mule Lucy, and one other, and also some other property, to W. L. Buck & Co., to secure a debt. About the last of May, 1873, plaintiff purchased Jack from Hardee for balance due him by Hardee on his note. Hardee died intestate July 21st, 1873, and four days afterwards, Todd and Buck & Co., in concert, seized all of the above property included in either mortgage, except the unnamed mule, and disposed of them as follows: Todd sold Pete and Jake for $200 each, and kept Lucy at $200; W. L. Buck & Co. sold Kit for $200, and kept Jack at $150. Todd being overpaid, turned balance over to Buck & Co.

Joanna R. Hardee administered upon estate of W. F. Hardee, and as administratrix brought her two actions, one against Todd, and the other against Buck & Co., for an account of the proceeds of these sales. While these actions were pending the plaintiff here brought this action. The three cases were referred to the same referee, and it was ordered that Ethel Lee's case should be heard in connection with Joanna Hardee's cases, on the coming in of the referee's reports. Separate judgments were rendered by the Circuit Court. In this case, he confirmed the report of the referee and gave judgment for the defendants. The defendants appealed upon the following grounds, to wit:

1. That the judge erred in holding that Joseph Todd and W. L. Buck & Co., acting in concert, had not only the right to seize and sell the mouse-colored mule Pete, the black mule Jake, the gray mule Jack, and the wagon and harness, which were covered by both mortgages, and which were taken as being worth $615—over $200 more than sufficient to pay the mortgage of Todd—but also the black mule Kit, which was not covered by the mortgage to W. L. Buck & Co., having been sold to plaintiff before the last-named mortgage was given.

2. That the judge erred in holding that the proceeds arising from the mule Kit, made by W. L. Buck & Co., were properly applied to the payment of their debt against the estate of W. F. Hardee, though the mule was not covered by their

mortgage, but had been sold before its execution to the plaintiff.

3. That the judge erred in holding that even Joseph Todd had the right to seize and sell the mule Kit, under his mortgage, until he had seized and sold the other property secured by his mortgage. And it is submitted, that even then he could only do it upon the other property being insufficient to satisfy the debt secured by the same.

The respondents moved to dismiss the appeal because that appellant could not appeal from the judgment in this case, without also appealing from the judgment in the Hardee cases, as both of said judgments must be taken as one.

*Mr. W. D. Johnson,* for appellant.

*Mr. Joseph Walsh,* contra.

March 12th, 1880. The opinion of the court was delivered by

WILLARD, C. J. The respondent moves to dismiss the appeal on the ground that, by an order of the Circuit Court, this cause was consolidated with two others of such a nature that the result of a judgment for the plaintiff in this case would be required to be harmonized with the conclusions of the court in the two other cases, in order to afford the full measure of justice as between the various parties to the consolidated action. The order in question does not assume to consolidate the cases. Its propriety is not put in issue by the present appeal, and we have only to consider its effect. It directs a reference to the same referee who was acting upon the two other causes, and "that on the coming in of said referee's report that the case shall then be heard in connection with the cases of the aforesaid Joanna Hardee against the above defendants." This was not an order for consolidation, but merely for a common hearing of the three cases. There is, therefore, no ground, in fact, for the objection to the appeal of E. Lee. But even if the causes had been consolidated to the extent of giving a single judgment in the three causes, that would not prevent Lee from appealing from so much and no more of such judg-

ment as, in his opinion, was material to the protection of his rights. He was under no obligation to extend his appeal to embrace matters of interest only to the other parties as involving the proper adjustment of their relative rights among themselves in the contingency of the success of Lee upon his appeal. If the result of his appeal might be such as to disturb the rights of the other parties, as among themselves, it was for them to protect themselves against this contingency by such cross-appeals as the nature of the case might require; but it is no part of the duty of an appellant to furnish to the respondents the means of adjusting, as among themselves, such rights as might be disturbed should he succeed in getting judgment on such appeal. The motion to dismiss the appeal must, therefore, be denied.

The facts, so far as they are necessary to an understanding of the question brought up by the appeal, are these: Hardee mortgaged certain personal property, including the mule Kit, to Todd, and subsequently sold the mule Kit, to the plaintiff, Lee. After the sale to plaintiff, Hardee made a mortgage to Buck & Co. of the same property that he had mortgaged to Todd, except the mule Kit, which had, in the meantime, been sold to the plaintiff. Todd and Buck & Co., on the maturity of the mortgages, seized the mortgaged property, including Kit, and sold it, acting in concert for that purpose. The property brought more than enough to satisfy Todd's mortgage debt, and the balance was paid over by Todd to Buck & Co., on account of their mortgage debt. It is contended by the plaintiff that Todd should have exhausted the other mortgaged property before selling the mule Kit, which had been alienated by the mortgagor to the plaintiff, and that as the sale was made in gross, and the whole fund was more than sufficient to pay Todd's mortgage, the balance should be regarded as representing the value of Kit to the extent that might be proper for that purpose. The referee took a different view, and held that " the concert of action of Buck & Co. and Todd, when three of the mules of Hardee, were in both of their respective mortgages, seems to be proper, their valuation of the property sold and claimed fair, and the distribution equitable," and he accordingly recommends judgment for the defendants in the present suit. This conclusion

was sustained by the judgment of the Circuit Court, and that judgment is questioned by the present appeal.

The plaintiff had the right to require that the property mortgaged other than that purchased by him should be sold, and the proceeds applied to the extinguishment of the mortgage before the property he had purchased should be sold. *Norton* v. *Lewis,* 3 *S. C.* 25. No equity that might exist between Todd and Buck & Co., growing out of the fact that Todd's mortgage covered property that could not be reached under Buck & Co.'s mortgage, could override the plaintiff's equity, arising from the fact that he was a *bona fide* purchaser of part of the mortgaged property prior to Buck & Co.'s mortgage. So at law, if Todd had seized the whole mortgaged property and sold it for a sum greater than was necessary to satisfy the mortgage debt, and held a balance, the plaintiff, as purchaser of part of the mortgaged property, could have maintained his action against Todd for so much of such balance as properly represented the value of the property purchased by him subject to the mortgage. If Todd could not have paid over that balance to the mortgagor in disregard of plaintiff's title, of which he had notice, then, for the same reason, he could not pay that amount to Buck & Co., who were mere *unsecured* creditors of the mortgagor, as it regarded the proceeds of the sale of Kit. It must, therefore, be concluded that the balance remaining in the hands of Todd, after satisfying his mortgage to the extent necessary for that purpose, must be regarded as representing the proceeds of the sale of Kit, and Todd must account therefor to the plaintiff.

The fact that the seizure and sale were the joint act of Todd and Buck & Co., does not affect this conclusion. Each of them must be regarded as acting as the agent of the other as well as in his own right. Buck & Co. could not seize and sell Kit in their own right, and must, therefore, be regarded as acting in that regard as the agents of Todd. Such being the case, Todd would stand in the same relation to the matter as if he had acted in his own behalf. The judgment must be set aside, and the cause remanded to the Circuit Court for proceedings in conformity with the foregoing conclusions.

McIVER and McGOWAN, A. J.'s, concurred.